IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| KENDRICK DEMOND GRAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 09-0669-KD-N |
| | ) | |
| JEFFREY HILBURN, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

This matter is before the court on defendant's Motion for Summary Judgment (doc. 24), together with the Brief (doc. 25) and Exhibits (doc. 26) filed with the motion, plaintiff's Response (32), Defendant's Reply (doc. 33), defendant's supplement to his Motion (doc. 35), and plaintiff's supplemental Response (doc. 36). The motion has been referred to the undersigned for entry of a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.2(c)(4). Upon careful review, the undersigned RECOMMENDS that defendant's Motion for Summary Judgment be GRANTED and that this action be DISMISSED with prejudice.

Background

Plaintiff, an inmate in state custody, filed this action *pro se* on October 13, 2009, raising claims pursuant to 42 U.S.C. § 1983[1] arising from his arrest by defendant on March 6, 2008. *See*

---

[1] Section 1983 provides, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . . 42 U.S.C. 1983 (1994).

doc. 4. Plaintiff alleges that he was arrested on charges concerning an alleged shoot-out, but was questioned about—and ultimately charged and convicted of—an armed robbery which had occurred on February 9, 2008. Plaintiff alleges that his arrest was unlawful, was made without a warrant or probable cause, and was the result of racial bias. Plaintiff seeks compensatory damages for lost wages, overdue bills and debts which were unpaid due to his loss of income, lost personal belongings, and for mental and emotional distress, and "for [his] Constitutional Rights to be up-held." Doc. 1.

Plaintiff was tried before a jury and was convicted of one charge of robbery in the first degree in violation of Ala.Code §13A-8-41. He was sentenced to 99 years' imprisonment. Plaintiff appealed his conviction, which was affirmed by the Alabama Court of Criminal Appeals in an unpublished opinion released March 11, 2011. *See* doc. 33, ex. 1.

As set forth in the opinion of the Court of Criminal Appeals, the evidence established the following facts:

> On February 9, 2008, at approximately 10:00 p.m., two African-American men wearing masks, gloves, and hoodies entered the Dairy Queen on Wolf Ridge Road in Mobile. Joseph Kelly, an employee at the Dairy Queen who was working that evening, opened the door to take the trash out when he was stopped by someone pointing a gun in his face. Kelly and other employees in the restaurant were ordered to kneel down and put their hands behind their heads. The men ordered the employees to give them their wallets. After getting the employees' wallets and the money out of the back office of the restaurant, the two men left in a vehicle that was parked in the restaurant parking lot with a third person acting as a getaway driver.
>
> Benjamin Graham, his wife and two children were in the restaurant when the robbery occurred. After Graham saw one of the men holding a gun, he alerted his family and they exited the restaurant as soon as it became safe to do so. As Graham and his family left the parking lot in their vehicle, he observed the robbers run out of the restaurant, throw some money in the air, and run towards a white Mercury vehicle. The vehicle with the three robbers inside, including the getaway driver, headed east on Moffett Road. Graham testified that the robbers' vehicle was soon next to his vehicle. While driving closely to the robbers' vehicle, Graham's wife called 911 to report the robbery and to inform law enforcement that they were following the getaway vehicle.

…[A high-speed chase ensued, during which the robbers' vehicle suffered a flat tire. The two passengers leapt from the car as it slowed and attempted to escape on foot. The car later crashed and the driver attempted to escape on foot, as well.] Following a short foot chase, the driver—later identified as Timothy Hall—was apprehended. Police officers were also able to apprehend the rear passenger of the vehicle who was later identified as Jajuan Holmes. The front passenger was not immediately apprehended on the night of the robbery.

Immediately after the suspects were taken into custody, police searched the vehicle and found, among other things, a pair of gloves in the front floorboard of the passenger side of the vehicle. During the investigation , police conducted interviews of Hall and Holmes; both men identified [plaintiff in the instant action, Kendrick] Gray as the third man involved in the robbery. A DNA sample taken from one of the gloves found in the front passenger floorboard of the getaway vehicle matched Gray's DNA.

Jessica Montgomer, Gray's girlfriend, worked at the restaurant in February 2008. On February 9, 2008, Montgomery left work at 4:00 p.m. and went to Gray's apartment. Holmes was at Gray's apartment at the time and Hall came over later. After eating dinner, Gray and Montgomery discussed whether the restaurant had cameras, the location of those cameras, and if a bank deposit had been made that day. Gray also asked Montgomery how many employees were on duty and when the trash was normally taken out. Gray told Montgomery that he needed to get his truck repaired. Approximately one hour later, Gray, Hall, and Holmes left the apartment and drove away in Hall's white vehicle. Montgomery identified the vehicle used in the robbery as Hall's vehicle.

Between midnight and 1:00 a.m., Gray called Montgomery and asked her to pick him up at a Mexican restaurant near Moffet Road. According to Montgomery, Gray was sweaty at the time she picked him up. Gray was wearing tennis shoes, blue jeans, a black shirt, and a black hoodie. At Gray's request, Montgomery took him to a motel where, using $100 Gray had given her, Montgomery rented a room for Gray under her name. Gray told Montgomery that he had robbed the Dairy Queen.

Hall testified that on February 9, 2008, he, Holmes, and Gray left Gray's apartment with a "big revolver" to go to the Dairy Queen restaurant. The three left in Hall's vehicle; Hall was driving, while Gray was riding in the front passenger seat and Holmes was in the backseat. While driving to the restaurant, Hall got lost and drove past the restaurant. When they found the restraurant again, Gray—referring to the restaurant—told Hall "it's too busy" and to keep driving. … [The men robbed an Arby's restaurant, dropped Gray off at his apartment, then picked up Gray's sister and took her home.] Afterwards, Hall and Holmes returned to Gray's apartment, picked up Gray, and returned to the Dairy Queen restaurant. Once at the restaurant, Gray told Hall to park the vehicle and wait because the restaurant was still too busy. As the store was closing, Gray and Holmes got out of the vehicle and put their masks and gloves on before entering

3

the restaurant. Hall testified that the gloves found in the floorboard of the front passenger seat did not belong to him.

Doc. 33, exhibit 1, at 2-5.

In response to the court's order (doc. 34) seeking supplementation of the summary judgment record, defendant Hilburn filed his affidavit, detailing the information known to him at the time of plaintiff's arrest. Plaintiff was afforded the opportunity to supplement (doc. 36) his argument against summary judgment in light of the supplemental affidavit.

Officer Hilburn testified in his affidavit that, at the time he questioned plaintiff on March 6, 2008, Jajuan Holmes, one of the men arrested on the evening of the robbery, had previously stated under questioning that plaintiff Gray was involved in the crime and had threatened to kill Holmes if Holmes did not participate in the robbery. Holmes had killed himself at Davidson High School earlier in the day on March 6, 2008. An investigator told Officer Hilburn that Gray had driven by Holmes' house earlier that same day and had fired shots into the house.

Officer Hilburn thereafter picked plaintiff up at his place of employment and brought him in to the police station; in a transcript attached to plaintiff's supplemental Response, his lawyer stated that Mr. Gray went voluntarily. Doc. 36, ex. 3, p. 57. Defendant further stated that, during questioning, Gray claimed that he was with his girlfriend, Jessica Jones Montgomery, at home at the time of the robbery. Hilburn then questioned Montgomery who denied Gray's alibi claim. According to Hilburn, she told the officer that:

> on the night of the robbery she got off work at Dairy Queen at 1600 hours and then went to Kendrick Gray's apartment. Jessica told Kendrick, JaJuan and a light skinned black male where the cameras at Dairy Queen were pointing, when the business made their deposits and how many employees would be working. Jessica stated that all three left the apartment in a white station wagon. According to Jessica, around 2330 or 2400 hours, Kendrick Gray called her on her cell phone and told her to come get him at Wolf Ridge Road and Beau Terra. Jessica said that the white, Mercury Sable Station Wagon wrecked at that location during the vehicle chase. Jessica stated that she picked Kendrick up and they got a room at Motel 6 on the Beltline at Airport and 1-65.

4

Doc. 35, ex 1 at 3-4.

Officer Hilburn states that he then placed Kendrick Gray under arrest. Officer Hilburn acknowledges that the DNA testing of the gloves found in the vehicle was not completed until after the arrest of Gray.

In plaintiff Gray's supplemental Response, he argues that "My entire trial and conviction was unconstitutional and violated my rights in every way. Mobile Police…and Mobile Judicial System had only one plan, "to convict me only." Doc. 36, at 4. He further states that he is "in the process of filing a Rule 32 with the State and a writ of habeas corpus into Federal Court." Id. The court notes that these arguments are beyond the scope of his § 1983 claims of unlawful arrest.

## Applicable Law

A. <u>Summary Judgment Standard</u>

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. Id. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." Id. (*quoting* <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility

determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." Offshore Aviation v. Transcon Lines, Inc., 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

    B.  Fourth Amendment – Unlawful Arrest

"A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim." Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996). But even if an officer lacked actual probable cause to arrest a person, he still can be entitled to qualified immunity if he had arguable probable cause: "that is, whether reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[ ] *could have* believed that probable cause existed to arrest." Skop v. City of Atlanta, 485 F.3d 1130, 1137 (11th Cir. 2007) (citation and internal quotation omitted) (emphasis in original). To determine whether arguable probable cause exists, courts must look at the totality of the circumstances. Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006).

"Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." Case v. Eslinger, 555 F.3d 1317, 1327 (11th Cir. 2009) (*citing* United States v. Gonzalez, 969 F.2d 999, 1002 (11th Cir. 1992)). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Id. (*citing* Illinois v. Gates, 462 U.S. 213, 245 n. 13 (1983)). "Probable cause does not require overwhelmingly convincing evidence, but only 'reasonably trustworthy

6

information.' " Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996) (*quoting* Marx v. Gumbinner, 905 F.2d 1503, 1506 (11th Cir. 1990)). Probable cause must be assessed "not with clinical detachment but with a common sense view to the realities of normal life." Wilson v. Attaway, 757 F.2d 1227, 1235 (11th Cir. 1985). One particular application of this commonsense view is that a reviewing court may "examine the collective knowledge of law enforcement officers if they maintained at least a minimal level of communication during their investigation." United States v. Willis, 759 F.2d 1486, 1494 (11th Cir. 1985).

To show entitlement to qualified immunity, "the defendant government official must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Jordan v. Doe, 38 F.3d 1559, 1565 (11th Cir. 1994) (internal quotations omitted). Discretionary authority includes all acts of a governmental official that were (1) undertaken pursuant to the performance of his duties and (2) within the scope of his authority. Id. at 1566. Here, making traffic stops and arrests clearly fell within the scope of defendant's authority as police officers. The burden then shifts to the plaintiff to show that (1) the facts, as alleged and viewed in the light most favorable to the plaintiff, establish a constitutional violation and (2) the constitutional right violated clearly was established. Id . at 1565. "Thus, the qualified immunity standard is broad enough to cover some mistaken judgment, and it shields from liability all but the plainly incompetent or those who knowingly violate the law." Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997).

Municipal police officers performing discretionary functions "shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising our of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." § 6-5-338(a), Code of Alabama 1975. "If their acts were

7

discretionary acts, the burden shifts to the plaintiff to demonstrate that the defendants acted in bad faith, with malice or willfulness in order to deny them immunity. 'Acts of such nature are not considered by Alabama law to be discretionary.' Wright v. Wynn, 682 So.2d 1, 2 (Ala.1996). Discretionary acts have been defined as "those acts as to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances." Id. at 2. *See also* L.S.B. v. Howard, 659 So.2d 43, 44 (Ala.1995)." Sheth v. Webster, 145 F.3d 1231, 1238-39 (11th Cir. 1998).

Analysis

Plaintiff's complaint does not identify particular legal theories upon which his claims are based. Defendant's brief in support of his Motion for Summary Judgment addresses plaintiff's claims under various theories: federal theories plaintiff styles "False Arrest" and "Malicious Prosecution" and state-law claims for "False Arrest/Imprisonment." Though the complaint does not appear to attempt to raise state law claims, since they were addressed by defendant, the court will address such theories in determining whether summary judgment is appropriate.

Federal Claims

In Heck v. Humphrey, the Court addressed whether an inmate may recover damages under section 1983 when a state police officer and county prosecutors "engaged in an 'unlawful, unreasonable, and arbitrary investigation' leading to petitioner's arrest; 'knowingly destroyed' evidence 'which was exculpatory in nature and could have proved [petitioner's] innocence'; and caused 'an illegal and unlawful voice identification procedure' to be used at petitioner's trial." 512 U.S. 477, 479 (1994). The Court decided that "[t]he common law cause of action for malicious prosecution provide[d] the closest analogy" to the claims brought by the petitioner and

8

noted that "a successful malicious prosecution plaintiff may recover, in addition to general damages, 'compensation for any arrest or imprisonment, including damages for discomfort or injury to his health, or loss of time and deprivation of the society.' " Id. at 484 (*quoting* W. Page Keeton *et al*., Prosser and Keeton on the Law of Torts 887–88 (5th ed. 1984)).

The Court rejected the inmate's claims and held that "a section 1983 plaintiff must prove that a conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486–87. The Court reasoned that to permit the petitioner's claim would result in permitting "a collateral attack on the conviction through the vehicle of a civil suit." Id. at 484. Thus, if a section 1983 plaintiff seeks to recover damages for an unconstitutional conviction, imprisonment, or other harm caused by actions whose unlawfulness would render the conviction or sentence unlawful, the plaintiff must prove that the conviction or sentence has been reversed, expunged, or declared invalid. Plaintiff Gray's conviction has not been overturned and therefore plaintiff may not proceed in this action on a theory of malicious prosecution.

On the other hand, a claim that a police officer effected an arrest without probable cause is not necessarily an implicit challenge of the plaintiff's conviction of the crime for which he was arrested.[2] *See e.g.* Hawthorne v. Sherriff of Broward County, 212 Fed.Appx. 943, 946 (11th Cir. 2001)("The district court (via its adoption of the magistrate's report) held that Hawthorne's false arrest claim was barred under Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d

---

[2] Plaintiff states that he was arrested and originally questioned about an alleged shooting which never occurred and for which he was never charged. Plaintiff has made no claim concerning this alleged misstatement or misdirection by defendant Hilburn, and the court is aware of no claim as to which it would be relevant.

9

383 (1994), or, if not Heck-barred, was subject to summary disposition based on the Officers' entitlement to qualified immunity. We agree with the latter determination.") It does not appear that the plaintiff's arrest led directly to evidence which, if the arrest were illegal, would have to have been excluded as 'fruit of the poisonous tree' in his trial, nor that there is any other connection between the challenged arrest and the plaintiff's conviction which would bar plaintiff's false arrest claim under Heck.

Defendant raises his entitlement to qualified immunity on the federal claims, arguing that the arrest was made with probable cause or, at the least, arguable probable cause. The uncontested evidence demonstrates that, prior to plaintiff's arrest, Officer Hilburn was aware of the incriminatory statement by Jajuan Holmes, identifying plaintiff as one of the other men involved in the robbery of the Dairy Queen. In addition, at the time of plaintiff's formal arrest, after Officer Hilburn spoke with Ms. Montgomery, he was aware of the information she provided, including that plaintiff had lied about his whereabouts on the evening of the crime.

Plaintiff offers the following additional evidence in his supplemental Response:

Exhibit 1—a collection of excerpts of statements and trial testimony offered to establish an issue of fact concerning the timing and contents of witness statements. However, this evidence does not undermine Officer Hilburn's claim to have relied upon the evidence available to him as the basis for probable cause to arrest plaintiff.

The first item in this exhibit is a cover letter for new evidence produced prior to trial. Plaintiff argues that this cover letter accompanied the "new" statement by one of his co-conspirators, Tim Hall, produced two years after plaintiff's arrest. Similarly, plaintiff offers a transcript of his attorney's closing argument, addressing Mr. Hall's changed statement, a copy of

the statements of Mr. Hall in 2008 and 2010.[3] However, Officer Hilburn did not claim that he relied on any statement from Mr. Hall as a basis for his belief that there was probable cause to arrest the plaintiff.

Plaintiff also offers evidence which shows that his girlfriend, Jessica Montgomery, originally told police that she supported his alibi, but later changed her story after being "threatened" with jail. Plaintiff offers the transcript of his lawyer's closing argument in his criminal trial to show that she changed her story two years later; not only is the argument of counsel not evidence, his attorney did not make such a representation at trial. Instead, he simply says that she told a different story in February of 2008. That statement is consistent with the remaining evidence[4] that she recanted her alibi that same day plaintiff was arrested. The fact that Ms. Montgomery began by agreeing to plaintiff's story and changed her mind when she realized she could get in trouble reflects a common theme in interrogations and does not preclude Officer Hilburn's reliance on her testimony in determining that there was probable cause to arrest plaintiff for the robbery.

Exhibit 2—a collection of exhibits concerning the timing and nature of the DNA evidence. However, as defendant Hilburn does not claim to have relied upon the DNA evidence in making the arrest of plaintiff, this evidence is irrelevant to the issue before the court.

---

[3] The date of the latter statement is not apparent from the exhibit, though plaintiff has made a notation on the bottom of the date he claims the statement was made. Nonetheless, presuming that plaintiff is correct and that he could adduce admissible evidence for a trial in this action concerning the date this statement was given, Mr. Hall's statement is irrelevant to the probable cause issue.

[4] Plaintiff offers an excerpt of the transcript of Ms. Montgomery's testimony at plaintiff's trial, in which she admits to changing her story after being charged with the robbery. Plaintiff also offers the transcript of his interrogation prior to his arrest, in which Officer Hilburn informs him that Ms. Montgomery recanted her claim that they had been together at home at the time of the robbery.

Exhibit 3—a collection of exhibits offered in support of plaintiff's argument that the arrest was illegal, for reasons other than lack of probable cause. Specifically, plaintiff offers two pages of transcript of his attorney arguing in support of an unsuccessful motion to dismiss the indictment; the comments of his attorney are not evidence, and the evidence itself makes clear that the issue was presented to the trial court and rejected.[5]

The plaintiff also offers a copy of the criminal complaint against him, formally issued after his actual arrest and signed—plaintiff alleges in violation of Alabama law—by Officer Hilburn as Complainant. This state law procedural error, if indeed it was one, is not relevant to any claim by plaintiff concerning his arrest.

The court finds that defendant Hilburn is entitled to qualified immunity on plaintiff's claim that he was arrested without a warrant or probable cause to believe that he had committed a crime. An arrest does not violate the Fourth Amendment if it is supported by probable cause. *See* Skop v. City of Atlanta, Ga., 485 F.3d 1130, 1137 (11th Cir. 2007). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." Id. (quotation omitted). This probable cause standard is practical and non-technical, applied in a specific factual context and evaluated using the totality of the circumstances. *See* Maryland v. Pringle, 540 U.S. 366, 370 (2003).

The evidence against plaintiff, particularly including the information provided by Holmes and Montgomery and the fact that Gray lied about his whereabouts at the time of the robbery, was sufficient to establish probable cause to arrest plaintiff for the robbery. Clearly, a reasonable

---

[5] To the extent that this evidence is related to an attempt to claim that the trial court erred in overruling that motion, as appears to be reflected by plaintiff's arguments in his Supplemental Response, it is barred by Heck v. Humphrey, *infra*.

officer could have believed that the arrest was based on probable cause and thus that it did not violate plaintiff's constitutional rights. Officer Hilburn is entitled to qualified immunity with regard to this claim.

State Law Claims

Presuming that plaintiff has properly raised claims for relief pursuant to state law, as well as the federal constitutional claims addressed above, the court finds that defendant is entitled to summary judgment on those claims, as well. It is well-settled that arresting suspects is within the line and scope of a police officer's duties, and is a discretionary act in the absence of bad faith, malice or willfulness. *See e.g.* Wood v. Kesler, 323 F.3d 872 (11th Cir. 2003). Plaintiff has failed to offer any evidence that defendant was not engaged in a discretionary function, or any evidence which might reasonably be found to support a finding of bad faith, malice or willfulness. Indeed, the court's finding that Officer Hilburn had *at least* arguable probable cause to arrest plaintiff would contradict any such implication from the record. Accordingly, it is recommended that the court find that defendant is entitled to immunity for any claims under state law relating to the arrest of the plaintiff, and grant summary judgment on all state law claims.

Conclusion

For the foregoing reasons, it is hereby RECOMMENDED that the defendant's Motion for Summary Judgment be GRANTED as to all claims on the basis of qualified immunity and discretionary function immunity, and that this action be DISMISSED with prejudice.

The attached sheet contains important information regarding objections to the Report and Recommendation.

DONE this the 1st day of September, 2011.

/s/ Katherine P. Nelson
UNITED STATES MAGISTRATE JUDGE

# MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. **Objection**. Any party who objects to this recommendation or anything in it must, within **fourteen (14) days** of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten [now fourteen] days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

(Emphasis added) A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial
determination that transcription is necessary is required before the United States will pay the cost of the transcript.

/s/ Katherine P. Nelson
UNITED STATES MAGISTRATE JUDGE